

Z000045976

**BARNES GROUP INC**
**C/O CORPORATE SERVICE CO, STAT AGENT**
**50 W BROAD ST STE 1330**
**COLUMBUS, OH 43215**

---

Date: August 18, 2021            Case No. : CV 2021 08 1190
DOMINIQUE JOHNSON vs. BARNES GROUP INC

---

### SUMMONS ON COMPLAINT BY CERTIFIED MAIL
### COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

To the above named party: You are hereby summoned to answer a complaint that has been filed against you in the Butler County Common Pleas Court by the plaintiff(s) named herein. A copy of the complaint is attached.

You are required to serve upon the plaintiff(s) attorney, or upon the plaintiff(s) if there is no attorney of record, a copy of your answer to the complaint within 28 days after receipt of this summons, exclusive of the day of service. The answer must be filed with this court within three days after service on Plaintiff's attorney.

The name and address of the plaintiff(s) attorney is as follows:

BRUCE, MATTHEW G
SPECTRUM OFFICE TOWER,
11260 CHESTER RD SUITE 825
CINCINNATI, OH 45246

If you fail to appear and defend, judgment by default may be taken against you for the relief demanded in the complaint.

**MARY L. SWAIN**
Butler County Clerk of Courts

*Mary L. Swain*

By: Norma Martin
Deputy Clerk

GOVERNMENT SERVICES CENTER ● 315 HIGH STREET ● SUITE 550 ● HAMILTON, OHIO 45011-6016

---

BUTLER COUNTY CLERK OF COURTS
www.butlercountyclerk.org

**EXHIBIT A**



# MARY L. SWAIN
## BUTLER COUNTY CLERK OF COURTS

Z000045977

**BARNES GROUP INC**
**9826 CRESCENT PARK DR.**
**WEST CHESTER, OH 45069**

Date: August 18, 2021        Case No. : CV 2021 08 1190
DOMINIQUE JOHNSON vs. BARNES GROUP INC

## SUMMONS ON COMPLAINT BY CERTIFIED MAIL
## COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

To the above named party: You are hereby summoned to answer a complaint that has been filed against you in the Butler County Common Pleas Court by the plaintiff(s) named herein. A copy of the complaint is attached.

You are required to serve upon the plaintiff(s) attorney, or upon the plaintiff(s) if there is no attorney of record, a copy of your answer to the complaint within 28 days after receipt of this summons, exclusive of the day of service. The answer must be filed with this court within three days after service on Plaintiff's attorney.

The name and address of the plaintiff(s) attorney is as follows:

> BRUCE, MATTHEW G
> SPECTRUM OFFICE TOWER,
> 11260 CHESTER RD SUITE 825
> CINCINNATI, OH 45246

If you fail to appear and defend, judgment by default may be taken against you for the relief demanded in the complaint.

**MARY L. SWAIN**
Butler County Clerk of Courts

*Mary L. Swain*

By: <u>Norma Martin</u>
Deputy Clerk

GOVERNMENT SERVICES CENTER ● 315 HIGH STREET ● SUITE 550 ● HAMILTON, OHIO 45011-6016

**EXHIBIT A**

FILED
MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS
08/18/2021 09:28 AM
CV 2021 08 1190

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

| | | |
|---|---|---|
| DOMINIQUE JOHNSON<br>1140 Longacre Dr.<br>Cincinnati, Ohio 45240<br>　　　　　Plaintiff,<br><br>v.<br><br>BARNES GROUP, INC.<br>d/b/a BARNES AEROSPACE<br>9826 Crescent Park Dr.<br>West Chester Township, Ohio 45069<br><br>**Serve also:**<br>BARNES GROUP, INC.<br>d/b/a BARNES AEROSPACE<br>c/o Corporate Service Co.<br>(Statutory Agent)<br>50 West Broad Street, Suite 1330<br>Columbus, Ohio 43215<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br>**COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

Plaintiff, Dominique Johnson, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

**PARTIES**

1. Johnson is a resident of the city of Cincinnati, county of Hamilton, state of Ohio.

2. Barnes Group, Inc. d/b/a Barnes Aerospace ("Barnes") is a foreign, for-profit corporation that conducts business within the state of Ohio. The relevant location of the events and omissions of this Complaint took place was 9826 Crescent Park Drive, West Chester Township, Ohio 45069.

EXHIBIT A

3. Within 300 days of the conduct alleged below, Johnson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2021-00296 ("EEOC Charge").

4. On or about June 16, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Johnson regarding the EEOC Charge.

5. Johnson received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

6. Johnson has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

7. Johnson has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## JURISDICTION & VENUE

8. The material events alleged in this Complaint occurred in or around Butler County, Ohio.

9. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307382(A)(1) and/or (3).

10. Venue is proper pursuant to Civ. R. 3(C)(1), (2), (3), and/or (6).

11. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

12. Johnson is a former employee of Barnes.

13. Johnson is a female/woman and is therefore in a protected class for her sex/gender.

14. Johnson is African American, and therefore in a protected class for her race.

15. At all times noted herein, Johnson was qualified for her position with Barnes.

2

16. At all times noted herein, Johnson could fully perform the essential functions of her job, with or without a reasonable accommodation.

17. Johnson worked for Barnes as an Assembly Worker from July 2017 until Barnes constructively terminated Johnson's employment on or about July 27, 2020.

18. When Johnson began working for Barnes in or around July 2017, Barnes trained her alongside Norma (Last Name Unknown) ("Norma LNU").

19. As a result of splitting training time with Norma LNU, Barnes did not adequately train Johnson.

20. In or around February 2019, despite Barnes not adequately training Johnson, Barnes promoted Johnson to Assembly Team Lead because of her hard and good work and dedication to Barnes.

21. After Barnes promoted Johnson to be Assembly Team Lead, Johnson noticed several internal conflicts between employees.

22. Specifically, Johnson became aware that Lytia Watson (HR Representative, African American) had a vendetta against Richard Wilson (Division Manager, Caucasian).

23. Evidently, Watson wanted Wilson's position, and was willing to try to get him fired.

24. In or around December 2019, Johnson attended a meeting with Watson for the party planning committee at Barnes.

25. Watson told Johnson that she was trying to get Wilson out of his position, but that she was waiting to see his numbers for the quarter.

26. Watson told Johnson to keep an eye on Wilson for anything worth reporting.

27. Johnson felt that Watson created a toxic work environment.

28. In or around September 2019, Johnson complained to Watson about the stressful nature of her work.

EXHIBIT A

29. In response, Watson told Johnson to "stop [her] crying, [and to []] never let a White man chase [her] out of [her] job." Watson's mention of race made Johnson uncomfortable.

30. In or around early 2020, there was an incident with an incorrectly manufactured part to a Rolls Royce product, causing over 1,000 parts to be sent back.

31. Watson made a huge deal out the situation and blamed the error on Wilson, who was not directly to blame.

32. Another Assembly Team Lead, Mark Williams, was fired for the incident. Johnson felt this was not fair and that Watson had specifically targeted Williams for discriminatory reasons.

33. On or around March 10, 2020, Johnson went to Wilson to complain of Watson's discriminatory behavior. This was a protected complaint of discrimination.

34. Johnson told Wilson that she thought Watson was targeting him and trying to get him fired.

35. Additionally, Johnson reported the earlier race comment, and another instanced when Watson said to the party planning committee (including Johnson) that Watson "only hired transgenders because [she was] interested in seeing what their private parts look like."

36. Wilson asked Johnson if she would be willing to go on the record with her complaint and turn it in to General Manager Bart Weihl: Johnson agreed. This was a protected complaint.

37. A few days later, Johnson texted Wilson saying she was nervous to come back to work for fear of retaliation for her protected complaint against Watson.

38. Wilson assured Johnson that the information was being kept private and investigated in a discrete, respectful manner.

39. On or around March 11, 2020, Johnson's grandfather passed away and she took three bereavement days.

40. Then, due to the COVID-19 shutdown, Johnson took a voluntary furlough.

4

EXHIBIT A

41. By the time Johnson returned to work on or around April 1, 2020, Watson had resigned.

42. Johnson was frustrated that Watson had the chance to resign instead of being fired.

43. In or around early April 2020, Johnson trained Jordan Monn (Caucasian).

44. On or around April 15, 2020, Johnson began feeling COVID-19 symptoms and was told by her doctor to quarantine until April 29, 2020.

45. When Johnson returned on or around April 29, 2020, she had a meeting with Operations Manager Steve Holley and Supervisor Josh Ardin.

46. Holley accused Johnson of approving non-conforming parts, specifically referring to Monn's frequent mistakes.

47. Johnson defended herself saying that Monn was new to the job and mistakes were common, and that the new COVID-19 policies including social distancing and made her job even more difficult.

48. Holley then threatened to demote Johnson.

49. Ardin stepped in and started defending Johnson.

50. Out of all the Assembly Team Leads, Johnson was the only woman and the only Team Lead accused of approving the non-conforming parts.

51. Holley obviously favored the male Team Leads. He took time to meet individually with all the other Team Leads but never met or asked to meet with Johnson.

52. After this meeting on or around May 7, 2020, Johnson emailed Lisa Tucker and Sarah Robertson (HR Representatives) and told them about the meeting with Holley and Ardin.

53. Johnson explained that she felt Holley was undermining her work and that she was worried that he was targeting her for termination for discriminatory reasons. This was another protected complaint.

EXHIBIT A

54. HR never responded to Johnson's email.

55. HR's failure to respond to Johnson's email, or even investigate, was an adverse action against her.

56. On or around May 15, 2020, Johnson forwarded the email to Wilson and Amy Puglise (HR Corporate Officer). This was another protected complaint.

57. Subsequently, Wilson talked to Johnson about her concerns saying that Holley could not fire her without Wilson's permission first, not to worry about the meeting, and that he would investigate the situation further.

58. Later that day, Puglise called Johnson asking why Holley would not recommend more training before demoting her.

59. In or around the middle of June 2020, Johnson felt that she was under so much stress and pressure, that she asked Wilson if she could give up her Team Lead position.

60. Wilson told Johnson to not to give up her position.

61. On or around June 25, 2020, Wilson and Robertson called Johnson into a meeting to demote her down to an Assembly Worker position.

62. Wilson explained that he was feeling pressure from management to demote her.

63. Johnson's demotion came with a pay cut.

64. The demotion and pay cut were adverse employment actions taken against Johnson.

65. These adverse employment actions were taken against Johnson in retaliation against her multiple protected complaints.

66. Johnson was so upset that she refused to sign the paperwork and Wilson sent her home for the rest of the day.

67. Disparately, Barnes did not demote Team Lead Orlando Robertson (African American).

6

68. Orlando Robertson had a history of sexually harassing his coworkers, was known for constantly making mistakes, falsified documentation for his position, and once even stole from Barnes.

69. Unlike Johnson, Orlando Robertson was not demoted, did not lose any pay, and even bragged that the discipline he did receive was a little slap on the wrist.

70. On or around August 11, 2020, Johnson sent her resignation letter to Tucker and Ardin.

71. In her resignation letter, Johnson explained that it was a necessary action for her because she could no longer deal with the hostile work environment, the unaddressed complaints of race and gender discrimination, and her constant suspicion of being retaliated against for her complaints.

72. Johnson concluded saying that the demotion was the last straw, making it impossible for her to succeed.

73. Barnes' disparate treatment and subsequent demotion created a situation were Johnson felt her only option was to resign; therefore, Barnes constructively terminated Johnson's employment.

74. Any reasonable person in Johnson's position would have similarly felt forced to resign.

75. Johnson's resignation was thus a constructive termination.

76. Johnson was actually forced to resign her employment discriminatorily due to her race and sex/gender, and/or in retaliation against her numerous protected complaints.

77. As a result of the above, Johnson suffered and continues to suffer damages.

## COUNT I: SEX/GENDER DISCRIMINATION

78. Johnson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

7

EXHIBIT A

79. Johnson is a member of a statutorily protected class based on her sex/gender under R.C. § 4112.02.

80. Barnes treated Johnson differently than other similarly situated employees based on her sex/gender, as evidenced by the disparate treatment between Johnson and the other Team Leads.

81. Barnes discriminated against Johnson on the basis of her sex/gender throughout her employment with the company.

82. Barnes knew or should have known of the discrimination against Johnson.

83. Barnes condoned, tolerated, and ratified this discrimination against Johnson.

84. This discrimination was severe and/or pervasive.

85. This discrimination was offensive to Johnson.

86. This discrimination would also be offensive to any reasonable person.

87. This discrimination interfered with Johnson's ability to perform her job duties.

88. This discrimination was based on Johnson's sex/gender.

89. This discrimination was so severe and pervasive that it materially altered the conditions of Johnson's employment.

90. Johnson, with no other reasonable choice, was then forced to resign her employment.

91. Johnson's resignation was a constructive termination, and therefore an adverse employment action.

92. Barnes constructively terminated Johnson's employment.

93. Barnes forced Johnson to resign based on her sex/gender.

94. Barnes violated R.C. §4112.02 when it constructively discharged Johnson based on her sex/gender.

95. Barnes violated R.C. §4112.02 by discriminating against Johnson based on her sex/gender.

96. Johnson suffered emotional distress as a result of Barnes' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

97. As a direct and proximate result of Defendant's conduct, Johnson suffered and will continue to suffer damages.

## COUNT II: SEX/GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

98. Johnson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

99. Johnson is a female/woman, and thus in a protected class for her sex/gender.

100. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's sex/gender.

101. Barnes treated Johnson differently than other similarly situated employees based on her sex/gender.

102. Barnes knew or should have known of the discrimination against Johnson.

103. Barnes condoned, tolerated, and ratified this discrimination against Johnson.

104. This discrimination was severe and/or pervasive.

105. This discrimination was offensive to Johnson.

106. This discrimination would also be offensive to any reasonable person.

107. This discrimination interfered with Johnson's ability to perform her job duties.

108. This discrimination was based on Johnson's sex/gender.

109. This discrimination was so severe and pervasive that it materially altered the conditions of Johnson's employment.

110. Johnson, with no other reasonable choice, was then forced to resign her employment.

9

EXHIBIT A

111. Johnson's resignation was a constructive termination, and therefore an adverse employment action.

112. Barnes constructively terminated Johnson's employment.

113. Barnes forced Johnson to resign based on her sex/gender.

114. Barnes violated Title VII when it constructively discharged Johnson based on her sex/gender.

115. Johnson suffered emotional distress as a result of Barnes' conduct and is entitled emotional distress damages pursuant to Title VII.

116. As a direct and proximate result of Defendant's conduct, Johnson suffered and will continue to suffer damages.

## COUNT III: RACE DISCRIMINATION

117. Johnson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

118. Johnson is African American and thus is in a protected class for her race.

119. R.C. § 4112 *et seq.*, provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

120. Barnes treated Johnson different than other similarly situated employees based upon her race.

121. Barnes knew or should have known of the discrimination against Johnson.

122. Barnes condoned, tolerated, and ratified this discrimination against Johnson.

123. Throughout her employment, Johnson made complaints of racial discrimination to Wilson.

124. This discrimination was severe and/or pervasive.

125. This discrimination was offensive to Johnson.

126. This discrimination would also be offensive to any reasonable person.

127. This discrimination interfered with Johnson's ability to perform her job duties.

128. This discrimination was based on Johnson's race.

129. This discrimination was so severe and pervasive that it materially altered the conditions of Johnson's employment.

130. None of her complaints were adequately addressed by Barnes.

131. Instead of remedying the situation, Barnes continued to foster a toxic work environment that left Johnson with no other reasonable choice but to resign her employment.

132. Johnson's resignation was a constructive termination, and therefore an adverse employment action.

133. Barnes constructively terminated Johnson's employment.

134. Barnes forced Johnson to resign based on her race.

135. Barnes violated R.C. § 4112.02 when it constructively discharged Johnson based on her race.

136. Barnes violated R.C. § 4112.02 by discriminating against Johnson based on her race.

137. Johnson suffered emotional distress as a result of Barnes' conduct, and it entitled emotional distress damages pursuant to R.C. § 4112.01 ete seq.

138. As a direct and proximate result of Defendant's conduct, Johnson has suffered and will continue to suffer damages.

### COUNT IV: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII

139. Johnson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

140. Johnson is African American and thus is in a protected class for her race.

141. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

142. Barnes treated Johnson differently than other similarly situated employees based on her race.

143. Barnes knew or should have known of the discrimination against Johnson.

144. Barnes condoned, tolerated, and ratified this discrimination against Johnson.

145. This discrimination was offensive to Johnson.

146. This discrimination would also be offensive to any reasonable person.

147. This discrimination interfered with Johnson's ability to perform her job duties.

148. This discrimination was based on Johnson's race.

149. This discrimination was so severe and pervasive that it materially altered the conditions of Johnson's employment.

150. Johnson, with no other reasonable choice was then forced to resign her employment.

151. Johnson's resignation was a constructive termination, and therefore an adverse employment action.

152. Barnes constructively terminated Johnson's employment.

153. Barnes forced Johnson to resign based on her race.

154. Barnes violated Title VII when it constructively discharged Johnson based on her race.

155. Barnes violated Title VII by discriminating against Johnson based on her race.

156. Johnson suffered emotional distress as a result of Barnes' conduct and is entitled emotional distress damages pursuant to Title VII.

157. As a direct and proximate result of Defendant's conduct, Johnson suffered and will continue to suffer damages.

## COUNT V: RETALIATORY DISCRIMINATION

158. Johnson restates each and every prior paragraph of this complaint, as if it were fully restated herein.

159. As a result of the Barnes' discriminatory conduct described above, Johnson complained about the bullying, harassment, and stress she was experiencing.

160. Barnes' actions were retaliatory in nature based on Johnson 's opposition to the unlawful discriminatory conduct.

161. Pursuant to R.C. §4112.02 and Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

162. Instead of adequately addressing Johnson's complaints and/or remedying the situation, Barnes constructively terminated Johnson's employment.

163. Johnson suffered emotional distress as a result of Barnes' conduct and is entitled emotional distress damages pursuant to R.C. § 4112.01 and Title VII.

164. As a direct and proximate result of Defendant's retaliatory discrimination against and constructive termination of Johnson, she suffered and will continue to suffer damages.

## COUNT VI: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

165. Johnson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

166. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because she engages in protected activity under Ohio law.

EXHIBIT A

167. A clear public policy exists and is manifested in R.C. § 4101.12 stating that "No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe."

168. A clear public policy exists and is manifested in R.C. § 4101.12 stating that "No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

169. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if she is terminated in retaliation for reporting to her employer that she is forced to work in an unsafe work environment. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, (1990), 49 Ohio St.3d 228. *See also Pytlinski v. Brocar Products, Inc.*, 94 Ohio St.3d 77 (Ohio 2011); *Jenkins v. Cent. Transp., Inc.*, No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

170. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on her complaints of dangerous, unsafe, or illegal activity.

171. On July 23, 2020, the Ohio Department of Health enacted an order requiring businesses and employers to take steps to prevent the spread of COVID-19 ("DOH Order").

172. In the DOH Order, an employer is required to "[c]omply with all applicable guidance for the U.S. Centers for Disease Control and Prevention and the Ohio Department of Health regarding social distancing." Director's Order for Facial Coverings throughout the State of Ohio, July 23, 2020, at 4(h).

14

173. In her meeting with Holley and Ardin on or around April 29, 2020, Johnson made protected complaints related to Barnes' COVID-19 protocol.

174. Shortly after making these complaints, Barnes constructively terminated Johnson's employment.

175. Barnes' termination of Johnson jeopardizes these public policies.

176. Barnes' termination of Johnson was motivated by conduct related to these public policies.

177. Barnes had no overriding business justification for constructively terminating Johnson's employment.

178. As a direct and proximate result of Barnes' conduct, Johnson has suffered and will continue to suffer damages.

## DEMAND FOR RELIEF

WHEREFORE, Johnson demands from Defendant the following:

(a) Issue an order requiring Barnes to restore Johnson to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Johnson for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorney's fees and non-taxable costs for Johnson claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

        Respectfully submitted,

        /s/ Matthew Bruce
        Matthew G. Bruce (0083769)
            Trial Attorney
        Evan R. McFarland (0096953)
        Brianna R. Carden (0097961)
        **THE SPITZ LAW FIRM**
        Spectrum Office Tower
        11260 Chester Road, Suite 825
        Cincinnati, OH 45246
        Phone: (216) 291-0244 x173
        Fax:   (216) 291-5744
        Email: Matthew.Bruce@SpitzLawFirm.com
        Email: Evan.McFarland@SpitzLawFirm.com
        Email: Brianna.Carden@SpitzLawFirm.com

        *Attorneys for Plaintiff Dominique Johnson*

## **JURY DEMAND**

Plaintiff Dominique Johnson demands a trial by jury by the maximum number of jurors permitted.

    /s/ Matthew Bruce
Matthew G. Bruce (0083769)


**UNITED STATES POSTAL SERVICE.**

# CV 2021 08 1190

Date Produced: 08/30/2021
Butler County, Ohio Clerk of Courts:

The following is the delivery information for Certified Mail™/RRE item number 9214 8901 9403 8300 0047 2794 37. Our records indicate that this item was delivered on 08/23/2021 at 12:57 p.m. in WEST CHESTER, OH 45069. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

This USPS proof of delivery is linked to the customers mail piece information on file as shown below:
BARNES GROUP INC
9826 CRESCENT PARK DR.
WEST CHESTER OH 45069

USPS MAIL PIECE TRACKING NUMBER: 42045069921489019403830000047279437
MAILING DATE: 08/18/2021
DELIVERED DATE: 08/23/2021
Case Number: CV 2021 08 1190
Tracking Number: Z000045977
Clerk: By: Norma Martin

MAIL PIECE DELIVERY INFORMATION:

BARNES GROUP INC
9826 CRESCENT PARK DR.
WEST CHESTER OH 45069

MAIL PIECE TRACKING EVENTS:

| Date/Time | Event | Location |
|---|---|---|
| 08/18/2021 15:06 | PRE-SHIPMENT INFO SENT USPS AWAITS ITEM | HAMILTON,OH 45011 |
| 08/19/2021 22:52 | ORIGIN ACCEPTANCE | HAMILTON,OH 45011 |
| 08/20/2021 00:07 | PROCESSED THROUGH USPS FACILITY | CINCINNATI OH DISTRIBUTION CENT 45234 |
| 08/20/2021 20:50 | DEPART USPS FACILITY | CINCINNATI OH DISTRIBUTION CENT 45234 |
| 08/21/2021 08:39 | ARRIVAL AT UNIT | WEST CHESTER,OH 45069 |
| 08/21/2021 08:50 | OUT FOR DELIVERY | WEST CHESTER,OH 45069 |
| 08/21/2021 09:21 | ATTEMPTED NO ACCESS TO DLVRY LOCATION | WEST CHESTER,OH 45069 |
| 08/23/2021 12:57 | DELIVERED LEFT WITH INDIVIDUAL | WEST CHESTER,OH 45069 |

FILED BUTLER CO.
COURT OF COMMON PLEAS

AUG 31 2021

MARY L. SWAIN
CLERK OF COURTS

# Courtview Tracking No.: Z000045977

**EXHIBIT A**